IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TERESA LAUDENSLAGER,<br>Plaintiff, | : CIVIL ACTION<br>:<br>: |
| v. | : No.: 10-CV-01158<br>: |
| KIDSPEACE,<br>Defendant. | :<br>: |

## DEFENDANT'S STATEMENT OF DISPUTED FACTS[1]

1.      As a result of the RSD in Plaintiff, Teresa Laudenslager's left ankle, she took leave pursuant to the Family and Medical Leave Act ("FMLA") from May of 1998 until November of 1998. N.T. Plaintiff, p. 21.

2.      A restraint is generally performed by only one KidsPeace employee during a given situation (N.T. Plaintiff, pp. 22-23) and typical days do not include the use of restraints. N.T. Scheffler, p. 14.

3.      According to Plaintiff, in or around February of 2005, her supervisor, Mike Boyer, moved her office from the central location to a closet-sized workspace because "he wasn't happy with [her] when [she] came back" because Plaintiff had complained to human resources about Boyer bringing his small child into work. N.T. Plaintiff, pp. 64-65.

4.      Following her December 2004 surgery, Plaintiff requested an accommodation from KidsPeace. Specifically, Plaintiff was limited in her ability to stand while performing her duties. KidsPeace accommodated Plaintiff's request, and according to Plaintiff, she did not experience

---

[1] Tellingly, despite being "disputed" by Plaintiff the majority of the facts set forth herein were admitted by Plaintiff during her deposition. Accordingly, Defendant contends that such facts are not actually disputed and should not prevent the filing of a motion for summary judgment. See Smith v. City of Allentown, 589 A.3d 684, 688 n.2 (3d Cir. 2009)(Party opposing summary judgment may not use affidavit that contradicts their prior deposition testimony in an attempt to defeat summary judgment).

any negative reaction from her supervisor as a result of her requested accommodation. N.T. Plaintiff, pp. 67, 69 and 71.

5.  In or around October of 2007, Plaintiff took a leave of absence for anxiety and depression. N.T. Plaintiff, p. 90-91. KidsPeace classified this leave as FMLA leave and provided Plaintiff with supporting documentation. N.T. Plaintiff, p. 95 and Laudenslager Exhibits 3 and 4, attached to N.T. Plaintiff.

6.  According to Plaintiff, she was not harassed by anyone at KidsPeace due to her alleged anxiety and depression. N.T. Plaintiff, p. 94.

7.  With regard to Plaintiff's inability to perform restraints, Scheffler testified he was not concerned with Plaintiff's restrictions because performing restraints was something that Case Managers rarely did. N.T. Scheffler, p. 19.

8.  In or around February of 2008, Scheffler informed Plaintiff that he intended to move her from her "closet office" off of the unit floor to the staff station in the house itself. Plaintiff's Exhibit 16, attached to N.T. Scheffler.

9.  Scheffler testified that he informed Plaintiff that all of the other Case Managers whom he supervised worked on the unit. Plaintiff initially informed Scheffler that she had worked hard to earn her office and did not want to move to the unit floor. N.T. Scheffler, pp. 69 and 81-83.

10. Scheffler believed that moving Plaintiff to the unit floor would increase communications and her effectiveness as a Case Manager as she would better understand client issues. N.T. Scheffler, pp. 77 and 84.

11. In response to Scheffler informing her of the move, Plaintiff emailed Scheffler and stated that "after she went to the compliance officer she got pulled into a supervisory meeting where

she was told that she was going onto the unit. Being the only case manager on the unit was retaliation." N.T. Layburn, p. 73.

12. During the course of the conflict resolution process, Plaintiff identified several concerns with the potential move to the floor, these issues included the following:

- privacy rules such as HIPPA could be compromised;
- closed charts stored in the old office would be accessible to team members and others. Team members may take things from charts that they are not supposed to;
- concerned about personal safety;
- need a lock box to keep monies required in regular job duties;
- need a locker to keep personal staff items;
- clients will always ask for "milieu stuff" and Plaintiff will not get work done and it will result in a change in relationships; and
- working on the unit is a violation of client's rights.

Plaintiff's Exhibit 16, attached to N.T. Scheffler.

13. On or about July 9, 2008, Scheffler provided Plaintiff with a Memorandum with detailed responses to Plaintiff's alleged concerns with moving to the unit. Id.

14. With regard to Plaintiff's "personal safety" concerns, Plaintiff was informed that she was not certified to perform restraints and that she should never be alone with clients. Plaintiff was further informed that this expectation was not changing as a result of the move to the unit. Id.

15. Accordingly, KidsPeace continued to accommodate Plaintiff's restriction of her inability to perform restraints on clients after her move to the unit floor. N.T. Scheffler p. 76 and N.T. Medlar pp. 173 and 176.

16. In this regard, Scheffler testified that other Case Mangers whom he supervised had similar restrictions and worked on the unit floor and individuals with such restrictions were not to be counted in the staff to child ratio. N.T. Scheffler pp. 84 and 86.

17. Plaintiff does not believe that informing anyone at KidsPeace of her anxiety and depression in 2007 played a role in Scheffler's decision to move her to the unit floor. N.T. Plaintiff, p. 110.

18. In or around early 2008, KidsPeace began the process of reducing its workforce due to economic factors. N.T. Plaintiff, p. 118 and Affidavit of Lisa Garbacik, ¶ 4.

19. Throughout the course of 2008, KidsPeace terminated the employment of approximately eighty (80) employees as a result of the Reduction in Force ("RIF"). Affidavit of Garbacik, ¶ 4.

20. KidsPeace's RIF Policy specifically informs employees that employment with KidsPeace is "at will" and, as such, their employment may be terminated for economic reasons. Id.

21. The RIF Policy further states that in the event a RIF occurs, KidsPeace will lay off employees based upon its needs and best interests. Id.

22. In or around September of 2008, it was determined that, based upon a declining number of clients in the Athlete Center, only one (1) Case Manager was necessary to cover that area. N.T. Garbacik, ¶ 5.

23. On or about September 8, 2008, Plaintiff was identified as the Case Manager who would be subject to the reduction in the Athlete Center. N.T. Wetzel, pp. 124 and 126; Plaintiff's Exhibits 20 and 21, attached to N.T. Scheffler.

24. The other Case Manager in the Athlete Center was a more senior employee as she was hired in 1989. N.T. Wetzel, p. 125 and Affidavit of Garbacik, ¶ 10.

25. On or about September 12, 2008, Plaintiff was provided with a Final Written Warning for "rejection of a supervisor", specifically refusing to obey the instructions of Scheffler. Plaintiff's Exhibit 17, attached to N.T. Scheffler.

26. During the incident between Scheffler and Plaintiff, Scheffler again requested Plaintiff to complete the assigned job related task to which Plaintiff stated that she refused to sign the acknowledgement form and that her supervisor could "write her up". N.T. Plaintiff, p. 128; Plaintiff's Exhibit 17, attached to N.T. Scheffler.

27. Plaintiff admits that during the incident she further stated that for his "own safety" Scheffler "needed to get away from [her] and leave [her] alone". Id.

28. Scheffler reported the incident to Medlar who conducted an investigation into the claims. N.T. Scheffler, p. 132 and N.T. Medlar, p. 45.

29. Medlar's investigation including speaking to two witnesses who confirmed Scheffler's account of the events. N.T. Medlar, pp. 47 and 76-77.

30. As a result of the investigation, Plaintiff was provided with a final written warning as her statement was viewed by KidsPeace as a threat to cause harm to her supervisor which was in violation of KidsPeace's policies which prohibit discourteous, abusive, or insubordinate conduct against supervisors or co-workers. Plaintiff's Exhibit 17, attached to N.T. Scheffler; N.T. Plaintiff, p. 130; and N.T. Medlar, pp. 77-78.

31. Plaintiff testified that she received the September 12, 2008 disciplinary action because she was making too many complaints about Scheffler and Medlar regarding ethical and compliance issues. N.T. Plaintiff, pp. 137-38.

33. Plaintiff did not inform Scheffler or Medlar of the reasons for her leave nor did she inform Scheffler that she suffered from anxiety and depression during her employment with KidsPeace. N.T. Medlar, pp. 13 and 64-65 and N.T. Scheffler, p. 27.

34. Plaintiff's initial note excusing her from work did not indicate that she suffered from anxiety or depression. N.T. Plaintiff, p. 149 and Laudenslager Exhibit 8, attached to N.T. Plaintiff.

35. The decision to select Plaintiff for the reduction in force occurred prior to Plaintiff notifying KidsPeace of her need for FMLA leave. N.T. Wetzel, pp. 124-26 and 136 and N.T. Plaintiff, p. 148.

36. Initially, Plaintiff's disciplinary action was not taken into consideration when making the decision to choose between Plaintiff and the other Athlete Center Case Manager. The discipline, however, did become a supporting document in the decision to select Plaintiff for the reduction in force as the factors for lay-off were performance, discipline, and seniority. N.T. Wetzel, p. 126.

37. Regardless of that discipline, however, on September 8, 2008, Plaintiff was identified as the individual who would be laid off at the Athlete Center as she was the least senior of the two individuals that were being considered. N.T. Wetzel, p. 125.

38. On or about September 25, 2008, KidsPeace notified Plaintiff, via written correspondence, that she had been selected for the reduction in force. N.T. Plaintiff, p. 163 and Laudenslager Exhibit 11, attached to N.T. Plaintiff.

39. One other Case Manager's employment was eliminated as a result of the RIF during the 2008 business year and approximately fifteen (15) employees were notified on September 25,

2008, that their jobs were eliminated due to a reduced number of clients. Affidavit of Garbacik, ¶ 12.

40. KidsPeace selected individuals for the reduction based upon the houses that were being impacted by a reduced census and not all houses in the Athlete Center were impacted by low census. N.T. Wetzel, p. 129.

41. Accordingly, if a house was not impacted by a low census, its employees would not be considered for the reduction. Id.

42. Further, KidsPeace does not allow "bumping" by classification. N.T. Wetzel, p. 128.

43. Subsequent to the reduction in force, Plaintiff's position was not replaced or reinstated. N.T. Wetzel, p. 131 and Affidavit of Garbacik, ¶ 15.

44. Plaintiff testified that KidsPeace terminated her because she made "too much noise" and complained about compliance issues too frequently. N.T. Plaintiff, pp. 149-152.

TALLMAN, HUDDERS & SORRENTINO

By: /s/*Steven E. Hoffman, Esquire*
Steven E. Hoffman, Esquire
Attorney I.D. #63911
Edward J. Easterly, Esquire
Attorney I.D. #204546
1611 Pond Road, Suite 300
Allentown, PA 18104-2256
(610)-391-1800
Attorneys for the Defendant

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TERESA LAUDENSLAGER,<br>    Plaintiff, | CIVIL ACTION |
| v. | No.: 10-CV-01158 |
| KIDSPEACE,<br>    Defendant. | |

### CERTIFICATE OF SERVICE

I, Edward J. Easterly, Esquire, do hereby certify that a true and correct copy of the foregoing Defendant's Statement of Disputed Facts was filed electronically on January 17, 2011 with the Court and is available for viewing and downloading from the ECF System.

TALLMAN, HUDDERS & SORRENTINO

By:    /s/Edward J. Easterly, Esquire
Steven E. Hoffman, Esquire
Attorney I.D. #63911
Edward J. Easterly, Esquire
Attorney I.D. #204546
1611 Pond Road, Suite 300
Allentown, PA 18104-2256
(610)-391-1800
Attorneys for the Defendant